# United States Court of Appeals
## For the First Circuit

No. 13-1298

TIMOTHY A. WILSON and CARRIE E. WILSON,

Plaintiffs, Appellants,

v.

HSBC MORTGAGE SERVICES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson, and Kayatta, Circuit Judges.

Helene Gerstle for appellants.
John S. McNicholas, with whom Lawson Williams and Korde &
Associates were on brief, for appellee.

February 14, 2014

**THOMPSON, Circuit Judge**.  Husband and wife Timothy A. Wilson and Carrie E. Wilson (collectively, "the Wilsons") appeal the district court's dismissal of their eight-count complaint alleging certain improprieties with respect to HSBC Mortgage Services, Inc.'s ("HSBC") acquisition of the mortgage on their home by way of an assignment from Mortgage Electronic Registration System, Inc. ("MERS").  The Wilsons claim the assignment is void because it was executed not by MERS, but by an HSBC employee who falsely purported to sign on MERS's behalf.  According to the Wilsons, HSBC never acquired the mortgage to their property and has no right to initiate foreclosure proceedings.

A homeowner in Massachusetts who is neither a party to nor a third party beneficiary of a mortgage assignment has standing to challenge the assignment on the grounds that it is void.  Although the Wilsons' complaint sets forth some rather troubling accusations about HSBC's business practices and foreclosure procedures, the Wilsons have not set forth a colorable claim that the mortgage assignment in question is void.  Because we agree they lack standing to raise certain claims, and because they have failed to state a claim for promissory estoppel with respect to a loan modification, their request for injunctive relief must also fail. Accordingly, we affirm.

## BACKGROUND

The facts are straightforward. We recite them as alleged in the Wilsons' Amended Verified Complaint ("Complaint"), supplementing as necessary with information found in the mortgage itself, public records, documents incorporated into the complaint by reference, and other matters susceptible to judicial notice.[1] Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

On June 28, 2004, the Wilsons granted a mortgage on their property in Northborough, Massachusetts to Ameriquest Mortgage Company ("Ameriquest") in order to secure a promissory note. The mortgage was recorded on July 6, 2004, and on that same day Ameriquest assigned its interest in the mortgage to MERS (the "2004 Assignment").[2] The 2004 Assignment was recorded on February 8, 2005.

HSBC entered the picture on March 19, 2009, the date on which MERS purported to execute a document assigning the Wilsons' mortgage to HSBC (the "2009 Assignment"). The 2009 Assignment was recorded in the Worcester County Registry of Deeds on April 13,

_____

[1] Although purporting to be an "Amended Verified Complaint," the document was signed by counsel rather than the Wilsons and was not signed under oath. The Wilsons' original complaint, filed in the Massachusetts Land Court, was verified by Plaintiff Timothy A. Wilson.

[2] While the Complaint refers to this as an "alleged" assignment, none of the counts relate to the 2004 Assignment.

2009.  According to the Complaint, the 2009 Assignment "was executed by Shelene Strauss, as Vice President of MERS."

The Wilsons attached a copy of the 2009 Assignment to their Complaint.  The document is entitled "Corporate Assignment of Mortgage" and identifies MERS as the assignor and HSBC as the assignee.  It goes on to identify the original mortgage granted by the Wilsons for their property in Northborough.  The assignment's text states, in pertinent part, "Assignor [MERS] hereby assigns unto the above-named Assignee [HSBC], the said Mortgage together with the Note or other evidence of indebtedness" with respect to the Wilsons' property.  The signature block towards the bottom of the document reads as follows:

> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
> On <u>March 19, 2009</u>
>
> By: <u>/s/ Shelene Strauss</u>
> SHELENE STRAUSS, Vice-President

The face of the 2009 Assignment further shows it was notarized on March 19, 2009, the same date upon which it was signed.

In spite of the 2009 Assignment's text, and notwithstanding their prior allegation that Strauss executed it on behalf of MERS, the Wilsons allege Strauss prepared the 2009 Assignment "on behalf of the assignee [i.e., HSBC] and not the assignor [i.e., MERS]."  The Complaint further alleges that Strauss has notarized other mortgage assignments from MERS to HSBC on at least two occasions, and that she "prepared and signed a

-4-

Satisfaction of Mortgage on behalf of Beneficial Financial, Inc."
The Complaint goes on to allege that Strauss has "robo-signed
documents assigning mortgages, including the [Wilsons'] mortgage,
to [HSBC] from various lenders."  The Wilsons do not define the
term "robo-signed" in their Complaint.

Following the 2009 Assignment, HSBC, "relying on the
robo-signed assignment[]," began foreclosure proceedings by sending
certain notices to the Wilsons and making various filings in the
Massachusetts Land Court.  Throughout these proceedings, HSBC
claimed that it held the mortgage on the Wilsons' property.  The
Wilsons, however, assert that HSBC did not, in fact, hold their
mortgage because the 2009 Assignment was "robo-signed and therefore
fraudulent."

The Wilsons go on to introduce allegations of
irregularities regarding HSBC's foreclosure processes.  In November
2010, HSBC reported to the Securities and Exchange Commission that
it had halted its foreclosures because of "certain deficiencies in
the processing, preparation and signing of affidavits and other
documents supporting foreclosures . . . including the evaluation
and monitoring of third-party law firms retained to effect [its]
foreclosures."  In April 2011, HSBC's parent company entered into
a Consent Order with the United States Department of the Treasury
Comptroller of Currency (the "Consent Order") stating, in part,
that it had "identified certain deficiencies and unsafe or unsound

practices in residential mortgage servicing and in the Bank's initiation and handling of foreclosure proceedings." According to the Complaint, the Consent Order required HSBC's parent company to hire an independent consultant to review certain residential foreclosure actions and to determine "whether loss mitigation activities with respect to foreclosed loans were handled in accordance with the requirements of the HAMP, and consistent with the policies and procedures applicable to the Bank's proprietary loan modifications or other loss mitigation programs."[3]

Then, on November 21, 2011, MERS again purportedly assigned the Wilsons' mortgage to HSBC (the "2011 Assignment"). This 2011 Assignment was recorded on November 23, 2011. The Wilsons allege that HSBC was no longer a member of MERS at this point in time, having ceased its membership sometime in 2009. The Wilsons further allege that, as of the time they filed their Complaint, their mortgage was in "inactive" status with MERS. They have not alleged that HSBC (or MERS) has taken any further actions towards foreclosing on their property.

---

[3] The Home Affordable Mortgage Program ("HAMP") is "a federal initiative that incentivizes lenders and loan servicers to offer loan modifications to eligible homeowners." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228 (1st Cir. 2013). HAMP's ultimate goal is to encourage mortgage holders to renegotiate the loans in order to reduce a homeowner's "'mortgage payments to sustainable levels, without discharging any of the underlying debt.'" Id. (quoting Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 347 (D. Mass. 2011)).

-6-

Indeed, it appears there was no further action at all with respect to the Wilsons' mortgage until the Wilsons submitted a hardship letter and income information to HSBC on March 26, 2012, in connection with a request for a loan modification. HSBC requested further information from the Wilsons the following day. According to the Wilsons, HSBC then "suggested" to the Wilsons that they would be required to pay 40% of the arrearage on their mortgage, approximately $25,000, as a condition of any loan modification. This offer does not comply with HAMP requirements, the Wilsons claim, because (1) HAMP does not require a down payment for a loan modification and (2) the Wilsons never received written notice that their request had been denied.

Wasting no time after making their request for a loan modification, the Wilsons filed their original complaint in the Massachusetts Land Court on March 30, 2012. HSBC promptly removed the matter to the United States District Court for the District of Massachusetts, and the Wilsons filed their "Amended Verified Complaint" on April 5, 2012. In addition to the facts recounted above, the Wilsons' eight-count Complaint contains the following allegations: (1) HSBC was not the present holder of their mortgage when it served them with a Notice of Right to Cure in 2009 and Notice of Intent to Foreclose in 2010, (2) HSBC fraudulently represented it was acting on behalf of MERS "when in fact it was acting on behalf of [HSBC] and assigning the mortgage to itself"

with respect to the 2009 Assignment, (3) HSBC breached its contract with the Wilsons by attempting to foreclose on their property when it did not hold the mortgage, (4) HSBC violated its obligation of good faith and fair dealing with respect to its foreclosure attempts, (5) HSBC made a promise, upon which the Wilsons relied, that all documents to be recorded with respect to their mortgage would be reliable and "free from fraud," (6) HSBC wrongfully attempted to foreclose on their property, (7) HSBC should be promissorily estopped from offering the Wilsons a loan modification whose terms varied from HAMP requirements, and (8) the Wilsons are entitled to injunctive relief. The Complaint seeks both an award of damages and "a permanent and preliminary injunction to issue against [HSBC] enjoining [HSBC] from conducting a foreclosure sale."

HSBC fired back with a Rule 12(b)(6) motion to dismiss for failure to state a claim. The district court granted the motion and dismissed the case on September 14, 2012. Key to the district court's decision was its conclusion that the Wilsons did not have standing to challenge the 2009 Assignment because they were not a party to that assignment and were not third-party beneficiaries thereof.[4] The next day the Wilsons filed a motion

_____

[4] The district court also dismissed Count II, which alleges fraud against HSBC, for failure to plead the claim with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. We need not consider this separate ground in light of our resolution of the standing issue.

for relief from judgment, which the district court denied on February 13, 2013. This timely appeal followed.

## DISCUSSION

### A. Standard of Review

We review the district court's grant of a Rule 12(b)(6) motion de novo. Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 (1st Cir. 2013). In doing so, we "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." Id. The parties do not dispute that Massachusetts law applies to all substantive issues in this case. Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). We are not wedded to the district court's reasoning and may "affirm the decision below on any ground made manifest by the record." Id.

Although we view the Complaint in the light most favorable to the Wilsons, we disregard statements or allegations that are "merely conclusory." Woods, 733 F.3d at 353. Nor are we required to take every single allegation at face value: "'[w]e exempt, of course, those facts which have since been conclusively contradicted by [the Wilsons'] concessions or otherwise . . . .'" Soto-Negrón v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003) (omission in original) (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). We can also take into account the mortgage itself, "'documents incorporated by reference in [the

-9-

Complaint], matters of public record, and other matters susceptible to judicial notice.'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).  And where, as here, standing is at issue we may consider "'further particularized allegations of fact deemed supportive of [plaintiffs'] standing,'" such as those contained within an affidavit.  McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)).

## B. Standing (Counts I-VI)

The district court dismissed the first six counts of the Wilsons' Complaint for want of standing.  Specifically, the court found that under Massachusetts law "parties cannot challenge mortgage assignments to which they were neither a party nor a third-party beneficiary."  Our first task, therefore, is to determine if the Wilsons have standing.  McInnis-Misenor, 319 F.3d at 67 ("Standing is . . . a threshold question in every case . . . .").  We, as did the district court, consider these first six counts together because each one relies on the Wilsons' contention that HSBC never acquired the mortgage on their home from MERS.[5]  Because the question of whether certain facts establish

_____

[5] The Wilsons acknowledge they "raised the issue of the validity of the assignments in Counts I-VI of the Complaint." Notably, the Wilsons utilize the plural form, "assignments," but the Complaint does not allege the 2004 Assignment is void, nor do the Wilsons develop this argument on appeal.  In their brief, the

standing is a question of law, we review the district court's resolution of the issue de novo. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 289 (1st Cir. 2013)

Standing--a litigant's right to be in the courtroom--must be established in every case, as the Constitution permits the federal courts to address only "actual cases and controversies." Id. (citing U.S. Const. art. III, § 2, cl. 1). A party does not establish standing simply because the other side agrees to submit a controversy to a federal court. See Sosna v. Iowa, 419 U.S. 393, 398 (1975). Instead, a plaintiff must show that he or she has a personal stake in the litigation's outcome by "establish[ing] each part of a familiar triad: injury, causation, and redressability." Culhane, 708 F.3d at 289; see also McInnis-Misenor, 319 F.3d at 67 (observing "[a] litigant bears the burden" of establishing

---

Wilsons state that while the 2004 Assignment is dated July 6, 2004, it was not notarized until six days later. In the very next breath, however, they concede in a footnote that "there was no requirement under Massachusetts Law at the time of the filing of this Complaint that an assignment was required to be notarized." The closest they come to making a legal argument is a single sentence asserting they "raised sufficient facts in their Amended Verified Complaint to support the contention that the Second, and perhaps even the First assignments are void." This wishy washy statement--one without analog in the Complaint--is a far cry from an allegation that the 2004 Assignment is void. Any argument with respect to its validity has, therefore, been waived. United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("Passing allusions are not adequate to preserve an argument in either a trial or an appellate venue."). While HSBC has dedicated a substantial part of its brief to arguing that the 2004 Assignment is valid, because its validity is not at issue we focus our inquiry on the 2009 Assignment.

-11-

standing). The third aspect of the test, redressability, is the most important one for our purposes today. To satisfy this prong, a "plaintiff must adequately allege that a favorable result in the litigation is likely to redress the asserted injury." Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Further, separate and apart from these constitutional concerns, a plaintiff must also generally show "that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." Id. (citing Ramírez v. Ramos, 438 F.3d 92, 98 (1st Cir. 2006)).

Here, we must determine whether the Wilsons have standing to assert their particular claims with respect to the 2009 Assignment. Far from being done in a vacuum, our analysis is guided by Culhane. In that case, we analyzed Massachusetts mortgage law and concluded that "a mortgagor has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee." Culhane, 708 F.3d at 291. Although this language may appear to grant standing to a broad group of individuals, we immediately dispelled any such notion by explaining how this "holding, narrow to begin with, is further circumscribed." Id. Pursuant to Culhane, under Massachusetts law

a mortgagor has standing only "to challenge a mortgage assignment as invalid, ineffective or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)." Id.; see also Woods, 733 F.3d at 354 ("[S]tanding exists for challenges that contend that the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands."). By contrast, "a [Massachusetts] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Culhane, 708 F.3d at 291.

The underlying reasoning behind this distinction is straightforward. A homeowner in Massachusetts--even when not a party to or third party beneficiary of a mortgage assignment--has standing to challenge that assignment as void because success on the merits would prove the purported assignee is not, in fact, the mortgagee and therefore lacks any right to foreclose on the mortgage. Id.; see also U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under these [Massachusetts] statutes is void.") (quoting Chace v. Morse, 189 Mass. 559, 561 (1905)). That same homeowner, though, lacks standing to claim the assignment is voidable because the assignee still would have received legal title vis-a-vis the homeowner.

-13-

Thus, even successfully proving that the assignment was voidable would not affect the rights as between those two parties or provide the homeowner with a defense to the foreclosure action.

Here, the district court--which did not have the benefit of Culhane or Woods--erroneously concluded that, as a matter of law, "parties cannot challenge mortgage assignments to which they were neither a party nor a third-party beneficiary." In the wake of Culhane and Woods, however, a trial court confronted with the standing issue in this type of case must conduct an inquiry to determine whether a plaintiff's allegations are that a mortgage assignment was void, or merely voidable. We now turn to this task.

### 1.  Void vs. Voidable Assignments

Before delving into the meat of the Wilsons' allegations, a word on the distinction between "void" and "voidable." "Void" contracts or agreements are "those . . . that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification." Allis v. Billings, 47 Mass. 415, 417 (1843). By contrast, "voidable" refers to a contract or agreement that is "injurious to the rights of one party, which he may avoid at his election." Ball v. Gilbert, 53 Mass. 397, 404 (1847). Thus, while the party injured by a voidable contract has the option of avoiding its obligations, it may choose instead to ratify the agreement and hold the other party to it. See Cabot Corp. v. AVX Corp., 448 Mass. 629, 637-43 (2007).

The Massachusetts courts have provided examples of voidable assignments in other contexts. Cabot teaches that a contract entered into under duress, whether economic in nature or otherwise, is voidable by the victim. Id. (discussing elements of economic duress with respect to a commercial supply contract). Agreements induced by fraudulent misrepresentations are voidable as well. See Shaw's Supermarkets, Inc. v. Delgiacco, 410 Mass. 840, 842 (1991) (noting employer would have been entitled to rescind employment contract that had been induced by the applicant's false representations). Where the parties have made a mutual mistake with regard to an essential element of an agreement, that agreement is voidable by the adversely affected party. See LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257-58 (1986) (addressing an attempt to set aside a workers' compensation lump-sum agreement). Further, when a corporate officer acts beyond the scope of his authority, "[h]is acts in excess of his authority, although voidable by the corporation, legally could be ratified and adopted by it." Commissioner of Banks v. Tremont Trust Co., 259 Mass. 162, 179-80 (1927) (finding an ultra vires purchase of stock by the corporation's president was voidable, but that the corporation ratified the action by accepting the dividends); see also Glovin v. Eagle Clothing Co., 247 Mass. 215, 217-18 (1924) (holding a corporation may ratify and become bound by obligations incurred on

-15-

its behalf by its president where the president acted outside the scope of his authority).

A void contract, on the other hand, is one that is of no effect whatsoever and whose terms a court will not enforce. See, e.g., Ball, 53 Mass. at 401-04 (refusing to enforce a contract where the parties placed a wager on the outcome of an election). Specific to the mortgage context, a void mortgage assignment is one in which the putative assignor "never properly held the mortgage and, thus, had no interest to assign." Culhane, 708 F.3d at 291. We have also found that a party who challenges a mortgage assignment on the grounds that the assignor was but a nominee for the mortgage holder and "never possessed a legally transferable interest" in the mortgage alleges a void, as opposed to merely voidable, assignment. Woods, 733 F.3d at 354 (applying Massachusetts law).

The common thread running through Culhane and Woods is the allegation that the foreclosing entity had no right to foreclose, as it had never become the mortgage holder in the first place. In other words, the homeowners sought to establish that the mortgage transfer from the assignor to the assignee--who in turn attempted to foreclose--was void at the outset. Through this allegation, the plaintiffs in those cases established standing because they challenged the foreclosing entity's status as mortgagee of their property. Similarly, we must determine whether

the Wilsons have set forth a claim that the 2009 Assignment was void and, therefore, that HSBC is not their mortgagee.

## 2. Have the Wilsons alleged a void or voidable mortgage assignment?

As we are concerned with standing in this case, we do not take the Wilsons' conclusory characterization of their allegations as being about a "void" assignment as gospel. Instead, we review the materials before us, including the text of the 2009 Assignment, in light of Massachusetts law to determine whether the Wilsons' Complaint sets forth allegations that the 2009 Assignment is void, or merely voidable.

The parties, having taken standing for granted with respect to the 2009 Assignment, have not presented any extensive argument with respect to that issue. They have, however, provided their views on the 2009 Assignment's validity under Massachusetts law as part of their treatment of the district court's resolution of the motion to dismiss. While presented for a different purpose, these arguments nevertheless highlight issues important to the standing analysis.

The Wilsons insist their Complaint alleges that the 2009 Assignment is void. The basis for this assertion is their claim that HSBC assigned their mortgage to itself because Strauss executed it on behalf of HSBC, not MERS. They urge us to find this is so from the face of the 2009 Assignment itself. HSBC disagrees entirely, arguing that the 2009 Assignment not only effectively

-17-

transferred the mortgage interest from MERS to HSBC but, moreover, is unassailable under Massachusetts law. Having considered the arguments of counsel and in light of the materials before us, we conclude that the Wilsons' Complaint does not allege that the 2009 Assignment is void. We explain.

The reasoning behind the Wilsons' argument that the 2009 Assignment is void runs as follows: Strauss is an employee of HSBC; Strauss executed the 2009 Assignment; when Strauss executed the assignment, she did so as an employee of HSBC; therefore, MERS never assigned the mortgage to HSBC. The Wilsons' own Complaint, however, flatly contradicts this position, as it explicitly alleges that "[t]he March 19, 2009 assignment from MERS to [HSBC] was executed by Shelene Strauss, as Vice President of MERS." Thus, the Complaint actually alleges that Strauss wore multiple hats, serving both as an employee of HSBC and an officer of MERS. Significantly, the Complaint does not allege that such dual agency violates the common law or any statute or applicable regulation.[6] Accordingly, the facts set forth in the Complaint actually describe a <u>valid</u> assignment from MERS to HSBC.

While this defective pleading is likely enough on its own to doom the Wilsons' first six counts, it is not the only thing we have to go on. We also have available for consideration the text

---

[6] Indeed, the Wilsons acknowledge the validity of such dual agency in a footnote to their brief.

of the 2009 Assignment. According to the Wilsons, "there is no indication that Ms. Straus[s] executed the assignment with purported authority from MERS." This statement is simply incorrect: the 2009 Assignment clearly identifies MERS as the assignor and HSBC as the assignee.

The 2009 Assignment's signature block, reproduced supra, brooks no argument as to the identity and roles of the parties thereto. MERS is listed as the assignor and HSBC the assignee. To make matters even more clear, Shelene Strauss's signature and position of vice president appear in the signature block. Notably, her signature is found underneath printed text stating the assignment was being made "by" MERS. In sum, the four corners of the document show in no uncertain terms that Strauss executed it in her capacity as a vice president of MERS. The Wilsons' claim that this instrument was executed on behalf of HSBC is wholly without merit.

Nevertheless, the Wilsons press on, arguing that an affidavit from HSBC Vice President Jeffrey Davis establishes Strauss executed the 2009 Assignment on behalf of HSBC, not MERS.[7] The affidavit does no such thing. Davis's affidavit, which HSBC originally filed in the Massachusetts Land Court, states only that Strauss has been an HSBC employee since January 2005, and that she

---

[7] Although not incorporated into the Complaint, it is appropriate for us to consider this affidavit as part of our standing analysis. See McInnis-Misenor, 319 F.3d at 67.

-19-

served as a vice president of HSBC on March 19, 2009. The affidavit is silent as to the circumstances surrounding the 2009 Assignment's execution. Contrary to what the Wilsons set forth in their brief, the affidavit is entirely consistent with and does nothing to disprove the Complaint's allegations that Strauss was a dual agent of both HSBC and MERS.

Indeed, the most that can be gleaned from the affidavit and Complaint is that Strauss was an employee or agent of both HSBC and MERS on March 19, 2009. The Wilsons themselves admit this sort of arrangement is utilized "many times" in assigning mortgages. The Wilsons do not argue there is anything illegal or untoward about Strauss acting in such a dual capacity.

This is just as well. In Culhane we determined the applicable Massachusetts statute, Mass. Gen. Laws ch. 183, § 54B, "neither places restrictions on who may be elected as an officer of the assignor nor imposes special requirements (say, regular employment) on who may serve as a vice president of an assignor corporation." 708 F.3d at 294. Significantly, we concluded that a remarkably similar mortgage assignment was valid under Massachusetts law, even though the individual executing the assignment was appointed "a vice president of MERS . . . purely as a matter of administrative convenience." Id.

There is no evidence in the record here as to the nature or length of Strauss's association with MERS. Yet, even had she

been appointed as a vice president solely for purposes of this assignment, this would make no difference. We said in Culhane that while this type of practice "can be disparaged on policy grounds, such policy judgments are for the legislature, not the courts." Id. Thus, the Wilsons' allegation that Strauss was also a vice president of HSBC at the time of this assignment does nothing to call into question the legality or validity of her executing it on MERS's behalf.

Moreover, Massachusetts statutory law has something to say about this mortgage assignment. Mass. Gen. Laws ch. 183, § 54B ("Section 54B") pushes the Wilsons' position, already moribund in light of our holdings in Culhane and Woods, over the brink. Section 54B provides, in relevant part, that

> [an] assignment of [a] mortgage . . . if executed before a notary public . . . by a person purporting to hold the position of . . . vice president . . . of the entity holding such mortgage . . . shall be binding upon such entity.

Mass. Gen. Laws ch. 183, § 54B.

Recognizing the danger Section 54B poses to their position, the Wilsons attempt to get out from under its shadow by urging us to find it inapplicable to the 2009 Assignment. The Wilsons begin their struggle by reiterating their contention that the 2009 Assignment was void at the outset because it was no more than HSBC's attempt to assign the mortgage to itself. They then argue simply that Section 54B "does not make an otherwise invalid

assignment valid" and, therefore, has no effect on the 2009 Assignment. In rebuttal, HSBC turns the Wilsons' argument on its head and takes the position that Section 54B actually renders the assignment "unassailable" because Strauss executed it in her capacity as a vice president of MERS, in accordance with the statutory language.

Neither party argues Section 54B is ambiguous, and the statutory language strikes us as quite clear. In Culhane, too, we found no need to depart from its plain language. 708 F.3d at 293-94. Furthermore, the Massachusetts Appeals Court recently addressed Section 54B in two recent unpublished opinions in which the Appeals Court simply applied the statute as written. See generally Jones v. Bank of New York, 84 Mass. App. Ct. 1123 (2013) (finding that because an assistant vice president of Countrywide Home Loans, Inc. had been authorized by a MERS corporate resolution to execute assignments on its behalf, she "had authority to assign [a] mortgage on behalf of MERS as a matter of law pursuant to G.L. c. 183, § 54B"); Adao v. Federal Nat'l Mortg. Ass'n, 84 Mass. App. Ct. 1121 (2013) (citing Mass. Gen. Laws ch. 183, § 54B) (finding that a mortgage holder that executes an assignment through a vice president "is bound by it"). Because Section 54B is "unambiguous, our function is to enforce the statute according to its terms."

See <u>Reading Co-Op. Bank</u> v. <u>Suffolk Constr. Co.</u>, 464 Mass. 543, 547–48 (2013).[8]

As we have said, the 2009 Assignment clearly shows that Strauss signed it on behalf of MERS as its vice president. The instrument further demonstrates Strauss executed it in the presence of a notary. Even the Wilsons admit that Section 54B "say[s] that once a person with purported authority executes a document in front of the notary . . . the document can be recorded and is 'binding on [such] entity.'" <u>See</u> Mass. Gen. Laws ch. 183, § 54B.

Here, the record leaves no doubt that Strauss purported to execute the 2009 Assignment pursuant to her authority as a vice president of MERS. The plain language of Section 54B, from all that appears to us in this record, would render that assignment binding upon MERS. <u>See</u> <u>Culhane</u>, 704 F.3d at 294 (concluding a mortgage assignment that "adhered to" Section 54B's requirements was valid under Massachusetts law). An assignment binding on the assignor is not, by definition, void. The Wilsons have simply failed to come forward with anything that indicates to us that Section 54B should operate any differently here than it did in <u>Culhane</u>, or that calls the 2009 Assignment's validity into question under Massachusetts law.

---

[8] The Wilsons have not argued that Section 54B is invalid or that its operation here would deprive them of any right protected by the United States Constitution or the Massachusetts Declaration of Rights.

Finally, the Wilsons' allegations that the 2009 Assignment is "fraudulent" and thus, void, because it was "robo-signed" are of no moment. The Wilsons have not defined the term or cited any authority showing it has any legal significance under Massachusetts law. This Court's own research has found none in Massachusetts or in our Circuit. Moreover, it does not appear that other jurisdictions have assigned a single definitive meaning to it either. Compare Reinagel v. Deutsche Bank Nat'l Trust Co., 735 F.3d 220, 223-24 (5th Cir. 2013) ("'Robo-signing' is the colloquial term the media, politicians, and consumer advocates have used to describe an array of questionable practices banks deployed to perfect their right to foreclose in the wake of the subprime mortgage crisis, practices that included having bank employees or third-party contractors: (1) execute and acknowledge transfer documents in large quantities within a short period of time, often without the purported assignor's authorization and outside of the presence of a notary certifying the acknowledgment, and (2) swear out affidavits confirming the existence of missing pieces of loan documentation, without personal knowledge and often outside the presence of the notary."), with Ohio v. GMAC Mortg., LLC, 760 F. Supp. 2d 741, 743 (N.D. Ohio 2011) ("Several national banks have been accused of using robosigners--loosely defined as bank employees tasked with rapidly signing large numbers of affidavits and legal documents asserting the bank's right to foreclose without

the employees actually checking the documents to ensure their accuracy--to fraudulently foreclose on homeowners during the recent financial downturn."), and Attorney Grievance Comm'n of Maryland v. Doe, 433 Md. 685, 688-89 (2013) ("Robo-signing is a term that most often refers to the process of mass-producing affidavits for foreclosures without having knowledge of or verifying the facts.") (internal quotation marks and citation omitted). We decline to speculate on the meaning the Wilsons ascribe to the term. Accordingly, the bare allegation of "robo-signing" does nothing to undermine the validity of the 2009 Assignment or render Section 54B inapplicable.

Summing it all up, there is no question that MERS held the Wilsons' mortgage on March 19, 2009, as the Wilsons have not challenged its acquisition of the mortgage through the 2004 Assignment. The Complaint and other record materials demonstrate that the Wilsons have alleged, at most, that the 2009 Assignment is potentially voidable under Massachusetts common law.[9] After consideration of the entire record, we find that the Wilsons have not alleged any facts which, if proven, would lead to a finding that the 2009 Assignment was void. Accordingly, the Wilsons do not have standing to assert their claims with respect to the 2009 Assignment. Finally, because the record demonstrates the 2009

---

[9] As the record indicates that the 2009 Assignment complies with Section 54B, it is likely that it is valid and binding upon MERS, which would foreclose even the claim that it is voidable.

Assignment is not void, the 2011 Assignment is superfluous and of no legal effect or significance with respect to this case.[10]  We thus affirm the district court's dismissal of Counts I through VI.

## C. Promissory Estoppel (Count VII)

Count VII alleges promissory estoppel against HSBC. Massachusetts law is clear with respect to the elements of that claim.  A plaintiff must allege and prove "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court, 448 Mass. 15, 27-28 (2006).  The district court dismissed this count in accordance with Rule 12(b)(6) after determining the Wilsons "fail[ed] to proffer even the basic elements of promissory estoppel, most notably some sort of promise and detrimental reliance."[11]  On appeal, the Wilsons

---

[10] The Wilsons intimate in their brief that the 2011 Assignment can only be explained by HSBC's recognition that the 2009 Assignment was invalid, as they note that the 2011 Assignment does not indicate that it "is confirmatory in any respect."  However, it seems reasonably clear to this Court that the 2011 Assignment was made as a prophylactic "belt and suspenders" response to the 2011 Consent Order and was intended to assure that HSBC had acquired good title by curing any potential defect in the 2009 Assignment.

[11] The court also noted that the Wilsons were attempting to ground their cause of action in an agreement between HSBC and the government, rendering the Wilsons incidental beneficiaries who do not have standing to sue for an alleged breach of that agreement.

-26-

contend they have sufficiently set forth the elements of promissory estoppel.

First, the Wilsons argue that HSBC did not comply with the requirements contained within the Statutory Power of Sale with respect to their mortgage. In their view, HSBC violated those terms when it attempted to foreclose without actually holding the mortgage. This argument may be quickly disposed of, as it clearly depends entirely on the supposition that the 2009 Assignment is void. Having already considered and rejected this proposition, the argument is similarly unavailing here.

The Wilsons' remaining argument, as set forth in their brief, is that HSBC represented to them it would review their application for a mortgage modification in accordance with "HAMP-like procedures," but instead offered them a "non-HAMP-like modification requiring a 40% downpayment [sic]." Rather than alleging an explicit promise or representation from HSBC, the Complaint brings up the 2011 Consent Order, claiming it is "[i]mplicit in" the Order that HSBC would "review loan modification applications in accordance with HAMP-like procedures," and that a 40% down payment is "not required under HAMP procedures."[12] The

---

[12] The Wilsons also allege that HSBC violated HAMP by failing to inform them of any action taken with respect to their loan modification application. This allegation is curious in light of their claim that HSBC is requiring a 40% down payment as a condition of any modification. Regardless, we fail to see how this allegation lends any support to the Wilsons' averment that Count VII adequately alleges the elements of promissory estoppel.

Wilsons' ultimate position appears to be that the Consent Order is a promise from HSBC to the government, which is functionally equivalent to a direct promise from HSBC to them. Under this logic, their argument must be that HSBC is bound to extend a loan modification offer that complies with HAMP requirements and is estopped from requiring a 40% down payment as a precondition for loan modification.[13]

For its part, HSBC urges us to uphold the district court's dismissal of Count VII. In its view, the Wilsons' claim for promissory estoppel is based upon either the Consent Order, the procedures of HAMP itself, or both. With respect to the Consent Order, HSBC contends it may not serve as the basis for a promissory estoppel claim because the Order, by its very terms, does not confer "any benefit or any legal or equitable right, remedy or claim" upon any person or entity that is not a party thereto. As for the Wilsons' attempt to rely on HAMP, HSBC argues first that there is nothing in the Complaint to indicate whether the Wilsons' loan is subject to HAMP at all and, further, that homeowners do not

---

[13] The Wilsons' brief also reiterates allegations from one of their earlier counts addressing the 2009 Assignment which alleges HSBC agreed to "conduct the foreclosure sale on the terms of the Power of Sale in the mortgage" and that "[i]mplict in this contract is an agreement by [HSBC] that all documents recorded by [HSBC] relative to this [m]ortgage shall be free from fraud and shall be reliable." These allegations have nothing to do with and are irrelevant to the Wilsons' request for a loan modification in 2012. They relate only to the Wilsons' claims about the 2009 Assignment, which we have already determined the Wilsons lack standing to pursue.

have a private cause of action under HAMP.[14]  At bottom, HSBC posits that the Complaint "simply fails to identify any promise made by [HSBC] to the [Wilsons] relative to the [Wilsons'] efforts to obtain a loan modification" and, therefore, they have failed to set forth a claim for promissory estoppel.

Our review of the Complaint shows that none of the allegations contain even the barest hint that HSBC made any sort of promise or representation to the Wilsons as to how it would handle their application for a loan modification.  This is fatal to the Wilsons' promissory estoppel claim unless they are able to utilize HSBC's agreement with the government as set forth in the Consent Order as a stand-in for a direct representation made to them by HSBC.  The Wilsons do not cite any authority--and we can find none--in support of this novel proposition.  Accordingly, we need not discuss the substance of the Consent Order beyond noting that the Wilsons are not a party to it.  Put simply, "borrowers are not third-party beneficiaries of agreements between mortgage lenders and the government."  MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491 (1st Cir. 2013) (adopting this reasoning from the Massachusetts District Court).  Therefore, the Wilsons may not

---

[14] We need not and do not consider whether HAMP imposes any requirements with respect to the Wilsons' mortgage because the Wilsons have not raised or argued this issue themselves.  Any such potential argument, therefore, has been waived.

-29-

utilize the Consent Order to make up for the absence of any promise or representation to them by HSBC.

In the absence of any allegation of a promise or representation to them by HSBC, the Wilsons' Complaint fails to set forth a claim for promissory estoppel. The district court did not err in dismissing Count VII.

## D.  Injunctive Relief (Count VIII)

Count VIII is styled as a request for injunctive relief. The district court dismissed this count as well, characterizing it as "merely a remedial measure disguised as a cause of action which would only be relevant if this Court held in Plaintiffs' favor on any of the previous counts enumerated herein."  On appeal, the Wilsons make only a cursory argument that the count should be reinstated along with the rest of the complaint, as the request for injunctive relief flows from the allegations therein. It is enough to say that we agree wholeheartedly with the district court's rationale for dismissal.  As we uphold the dismissal of the first seven counts, it inevitably follows that the Wilsons are not entitled to an injunction under any circumstances, and the district court correctly dismissed this count.

CONCLUSION

Under Massachusetts law, homeowners in the Wilsons' position only have standing to challenge a prior assignment of their mortgage on the limited grounds that the assignment was void.

After careful review, we conclude the Wilsons have not set forth any potentially meritorious claim that the 2009 Assignment is void. Indeed, everything the Wilsons have put before us gives us no reason to question the validity of the 2009 mortgage transfer from MERS to HSBC. We also conclude that the Wilsons' Complaint fails to set out a claim for promissory estoppel, and that their claim for injunctive relief fails as well.

Although the Wilsons set forth troubling allegations that HSBC did not follow proper foreclosure procedures even after entry of the Consent Order and the 2011 Assignment, we have no cause to conduct an inquiry into those activities within the context of this case. Further, if the Wilsons have complaints about the mortgage assignment procedures used here, any requests for redress must be directed to the Legislature.

For the foregoing reasons, the district court's dismissal of the Wilsons' Complaint is affirmed.