# United States Court of Appeals
## For the First Circuit

No. 15-2310

THOMAS O. FLOCK, ET AL.,

Plaintiffs, Appellants,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Stahl, and Thompson,
Circuit Judges

Paul D. Cullen, Sr., with whom Joyce E. Mayers, Paul D. Cullen, Jr., The Cullen Law Firm, PLLC, and John A. Kiernan, Bonner, Kiernan, Trebach & Crociata, LLP were on brief for appellants.

Caroline D. Lopez, Attorney, Appellate Staff Civil Division, U.S. Department of Justice, with whom Kathryn B. Thomson, General Counsel, Department of Transportation, Paul M. Geier, Assistant General Counsel for Litigation, Peter J. Plocki, Deputy Assistant General Counsel for Litigation and Enforcement, Joy K. Park, Senior Trial Attorney, with whom Charles J. Fromm, Acting Chief Counsel, and Debra S. Straus, Senior Attorney, Federal Motor Carrier Safety Administration, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Carmen M. Ortiz, United States Attorney for the District of Massachusetts, and Matthew M. Collette, Attorney, Appellate Staff Civil Division, U.S. Department of Justice, were

on brief for appellee.

_____

October 21, 2016

_____

**STAHL**, **Circuit Judge**. As part of its regulatory mandate to maintain and enhance safety on the nation's highways, the Federal Motor Carrier Safety Administration (FMCSA) maintains a database of inspection history and safety records pertaining to commercial motor vehicle operators. These reports, which are provided to the agency by individual states in exchange for federal funding, can be made available for a small fee to employers seeking to gather records on prospective drivers whom they might wish to employ. In order for such reports to be disseminated, the agency must obtain driver consent, consistent with the requirements of the Privacy Act, 5 U.S.C. § 552a et seq.

Appellants in this case are a group of drivers who allege that disseminating certain information contained in the database, in particular, driver-related safety violations that are not deemed by the Secretary of Transportation to have been "serious," exceeds the agency's statutory mandate under 49 U.S.C. § 31150, which governs the agency's disclosure obligations. Appellants brought suit against the FMCSA and the Department of Transportation in the U.S. District Court for the District of Massachusetts, arguing that § 31150 unambiguously prohibited the agency from disclosing non-serious driver-related safety violations. They further argued that, although they had signed consent forms, these were ambiguous as to whether they authorized disclosure of non-serious violations or, in the alternative, were coercive in that

- 1 -

the drivers had no choice but to sign the forms if they ever wanted to apply for future jobs. Appellants therefore argue that the potential disclosure to employers of non-serious driver-related safety violations violates the Privacy Act.

The district court granted the FMCSA's motion to dismiss, reasoning that § 31150 was ambiguous as to the agency's authority to include non-serious driver-related safety violations in the database and that the agency's interpretation of the statute was entitled to deference and ultimately permissible under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). This appeal followed. After oral argument and careful consideration, we AFFIRM.

## I. Facts & Background

The FMCSA, a sub-agency of the Department of Transportation (DOT), is tasked with the maintenance of safety in motor carrier transportation. FMCSA works with individual states to collect motor carrier safety data, including crash reports and safety violations, through roadside inspections. Collected data is stored in a database known as the Motor Carrier Management Information System (MCMIS).

In 2005, Congress mandated, through 49 U.S.C. § 31150, that the agency grant motor carrier employers access to certain minimum information from the MCMIS database in order to provide potential employers with a fast and reliable method for obtaining

information about prospective employees.  That statute provides, in relevant part:

> The Secretary of Transportation shall provide persons conducting pre-employment screening services for the motor carrier industry electronic access to the following reports contained in the [MCMIS database]... 1) Commercial motor vehicle accident reports; 2) Inspection reports that contain no driver-related safety violations; 3) Serious driver-related safety violation inspection reports.

49 U.S.C. § 31150(a).

The purpose of the database is "to assist the motor carrier industry in assessing an individual operator's crash and serious safety violation inspection history as a preemployment condition."  49 U.S.C. § 31150(c).  "Serious" driver-related safety violations are defined in the statute as a violation which "the Secretary [of Transportation] determines will result in the operator being prohibited from continuing to operate a commercial motor vehicle until the violation is corrected."  49 U.S.C. § 31150(d).  The statute does not explicitly state whether the agency is required to make available non-serious driver-related safety violations.  Driver consent is required before records can be disseminated to a potential employer.  49 U.S.C. § 31150(b).

On March 8, 2010, the agency issued a System of Records Notification (SORN) proposing the establishment of a system of records for a Pre-Employment Screening Program (PSP), which was designed to give prospective employers rapid access to crash and inspection data about potential driver employees.  The SORN

- 3 -

indicated that payment of a $10 fee would be required to access the PSP, and also explained that the PSP would contain MCMIS data regarding the most recent five years' crash data and the most recent three years' inspection information. Consistent with 49 U.S.C. § 31150(b)(2) and 5 U.S.C. § 552a, driver consent was also required before such information could be disclosed. The consent form states, in relevant part, "I understand that I am consenting to the release of safety performance information including crash data from the previous five (5) years and inspection history from the previous three (3) years." On July 19, 2012, the FMCSA issued another SORN, reaffirming that the PSP would include the most recent five years' crash and most recent three years' inspection data, adding that this would "includ[e] serious safety violations for an individual driver." 77 Fed. Reg. 42548-02. Neither of these SORNs purported to exclude non-serious driver-related safety violations from the database.

Appellants, professional commercial vehicle operators, brought suit against the DOT, the FMCSA and the United States, alleging that the FMCSA had prepared and made available for dissemination to potential employers one or more PSP reports that included non-serious driver-related safety violations. According to Appellants, the inclusion and possible dissemination of non-serious violations runs afoul of the Privacy Act, which contains "a comprehensive and detailed set of requirements for the

- 4 -

management of confidential records held by Executive Branch agencies." F.A.A. v. Cooper, 132 S. Ct. 1441, 1446 (2012). The Privacy Act limits all administrative agency disclosure of personal records, subject to various exceptions, one of which is the consent of the person to whom the record pertains. 5 U.S.C. § 552a(b).

FMCSA moved to dismiss the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and alternatively argued that the plaintiffs lacked standing and that the case should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The district court held that the complaint adequately alleged an impending future injury for Article III purposes, and elected to reach the merits without deciding whether the plaintiffs had adequately alleged standing under the Privacy Act. On the merits, the district court held that 49 U.S.C. § 31150 was ambiguous as to the question of non-serious driver-related safety violations, and that FMCSA's interpretation of the statute was ultimately permissible under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). This appeal followed.

## II. Discussion

We review a district court's grant of a motion to dismiss for failure to state a claim *de novo*. Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 (1st Cir. 2013). This requires us to "construe all factual allegations in the light most favorable to

- 5 -

the non-moving party to determine if there exists a plausible claim upon which relief may be granted." Wilson v. HSBC Mortgage Servs., Inc., 744 F.3d 1, 7 (1st Cir. 2014). To survive a motion to dismiss, the complaint must state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A. Standing

As a threshold matter, the FMCSA argues that Appellants have not properly pled standing under Article III or under the Privacy Act. In order to satisfy the requirements of Article III standing, a party must allege sufficient facts to demonstrate injury-in-fact, a causal relationship between the injury and the challenged conduct, and redressability of that injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Allegations of future injury must be sufficient to show that such injury is "certainly impending" in order to constitute injury-in-fact. Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013). In addition to the constitutional standing requirements, in order to bring a claim for damages under the Privacy Act, Appellants must demonstrate that the FMCSA's actions had an "adverse effect" on them in a way that caused "actual damages," and that the FMCSA's actions were "intentional or willful." 5 U.S.C. § 552a(g)(1)(D); id. § 552a(g)(4)(A).

The district court found that the complaint "adequately alleges an adverse effect sufficient to meet the constitutional standing requirements," while noting that "[w]hether the complaint adequately alleges an injury sufficient to state a claim under the Privacy Act is a different question, which the Court does not reach." Because we believe this case can be decided easily on the merits, we assume without deciding that Appellants have adequately pled standing under both Article III and the Privacy Act.

B. The Agency's Interpretation under *Chevron*

When agency action is grounded in an interpretation of the agency's organic statute, we apply the familiar framework set forth by the Supreme Court in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). Under Chevron, we first ask whether Congress has spoken to the precise question at issue. "If the intent of Congress is clear," using the "traditional tools of statutory construction, ... the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. If Congress has not unambiguously expressed its intent as to the precise question at issue, the agency's interpretation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Id. at 843-44. Under the second prong, the agency's construction is accorded substantial deference, and courts are not to substitute their own judgment for that of the agency. See

United States v. Mead Corp., 533 U.S. 218, 229 (2001) ("[A] reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise.").

Determining whether ambiguity exists within a statute requires us to apply the "ordinary tools of statutory construction." City of Arlington, Tex. v. F.C.C., 133 S. Ct. 1863, 1868 (2013). First and foremost, this requires beginning with a textualist approach, as the "plain meaning" of statutory language controls its construction. Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir. 1995) (internal citation omitted).

We conclude that § 31150 does not unambiguously restrict the agency's discretion to make records including non-serious driver-related safety violations available to potential employers with driver consent. The statute is silent as to non-serious violations. Appellants argue that by including three specific categories of reports that the agency must make available, Congress imposed a ceiling on the agency's disclosure authority, excluding categories of reports not specifically enumerated. However, § 31150's command that the agency "shall provide" certain reports can just as easily be read as a floor, an articulation of the agency's minimum disclosure obligations, rather than a ceiling. See Mass. Trs. Of E. Gas & Fuel Assocs. v. United States, 377 U.S.

235, 244 (1964) (noting that "the word ['shall'] does not of linguistic necessity denote a maximum"). There is no specific language in the statute which precludes the agency from making other driver-related information available to prospective employers, provided they have driver consent. We therefore agree with the district court's conclusion at Chevron Step One that Congress has not spoken to the precise question of non-serious violations.

Finding, as we have, that the statute is ambiguous as to the precise question of non-serious driver-related safety violations, we will not disturb an agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 843-44. The agency's interpretation easily passes muster under this test for two reasons. First, reading the statute as a floor comports with the broader statutory purpose of § 31150 and the agency's mandate to promote highway safety. Given that the focus of the database is on the motor carrier industry, by providing information on driver safety records to potential employers, it is hard to see how this goal would be undermined by the disclosure of *more* information. See 49 U.S.C. § 31150(c) ("The process for providing access to [the MCMIS database] shall be designed to assist the motor carrier industry in assessing an individual operator's crash and serious safety violation inspection history as a pre-employment

- 9 -

condition.").  Indeed, the disclosure of other non-serious driver-related safety violations, such as speeding tickets or other fines, would presumably help achieve Congress's objective in empowering the FMCSA to promote highway safety.

Second, the agency's reading does not leave driver-employees without protection, as both the Privacy Act and § 31150(b)(2) require driver consent before the relevant MCMIS records can be disclosed.  There is no suggestion that the agency has disclosed any information without driver consent, and nothing in the record which leads us to conclude that the agency's reading of the statute is impermissible.

To conclude, we agree with the district court that the agency's interpretation is a reasonable and permissible construction of the statute and is entitled to Chevron deference.

C. Consent Forms under the Privacy Act

One final argument raised in this appeal is whether the mandatory consent form signed by Appellant drivers are illegitimate as a result of being ambiguous or coercive.  The parties argued this issue before the district court, but the court did not make a ruling.[1]  The form reads as follows: "I understand

---

[1] By failing to raise the arguments about the consent form in their opening brief, appellants may have waived this argument on appeal.  However, because the consent form argument fails on the merits, we need not address the issue of waiver.

that I am consenting to the release of safety performance information including crash data from the previous five (5) years and inspection history from the previous three (3) years." Appellants make two arguments that the consent forms are invalid, neither of which we find convincing.

First, they argue that the consent forms can only be read as authorizing disclosure of violations specifically enumerated in § 31150. Since we conclude that the agency's reading of the statute as a floor, rather than a ceiling, is permissible, Appellants' argument on this score, that "crash data from the previous five (5) years and inspection history from the previous three (3) years" should be read as including only "serious" driver-related safety violations, is unavailing. A plain reading of the consent form reveals nothing that would suggest that only violations deemed by the Secretary of Transportation to be "serious" would be released to a potential employer.

Second, Appellants argue that the consent forms are coercive, since drivers have no choice but to sign off on the release of their records in order to seek future employment, and that signing this form "would certainly doom any prospect for employment." This argument fails for two reasons. First, Appellants do not allege, nor is it suggested, that employment with motor carriers is contingent on participation in the PSP. The language of § 31150 itself makes clear that the use of the PSP

- 11 -

by employers is entirely optional.  <u>See</u> 49 U.S.C. § 31150(c) ("Use of the process shall not be mandatory and may only be used during the preemployment assessment of an operator-applicant.").  Second, even assuming that the majority of motor carrier employers would seek to use the MCMIS database, Appellants have failed to show that their chances for employment are doomed entirely as a result of employers having access to their driving records which include non-serious violations.  Finally, it bears repeating that broader access to such information in the motor carrier industry, from the standpoint of improving highway safety, is consistent with Congressional intent in passing § 49 U.S.C. § 31150.

**AFFIRMED.**