# United States Court of Appeals
## For the First Circuit

No. 12-2108

FRANK P. BUTLER,

Plaintiff, Appellant,

v.

DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE FOR RALI 2007 QS3,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Dyk[*] and Kayatta,
Circuit Judges.

Glenn F. Russell, Jr., with whom Law Office of Glenn F. Russell, Jr., was on brief for appellant.
Amy B. Hackett, with whom Richard E. Briansky and Prince Lobel Tye LLP, were on brief for appellee.

April 4, 2014

---

[*]  Of the Federal Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** In the wake of the foreclosure crisis, litigants have increasingly sought out clarification regarding the validity of mortgage transfers precipitated by Mortgage Electronic Registration Systems, Inc. ("MERS"). The general contours of these claims are well known, and many of the facts underlying this case parallel past foreclosure litigation. A homeowner, Frank P. Butler ("Butler"), upon falling behind in his mortgage payments, saw his home foreclosed upon, twice. These foreclosure sales were not conducted by Butler's original lender, but by a financial institution that had received his mortgage via an assignment from MERS. Butler brought suit for wrongful foreclosure, slander of title, and unfair and deceptive business practices under Massachusetts law. Finding that the foreclosure sales were in accordance with all relevant statutory law, the district court dismissed for failure to state a claim. On appeal, Butler presents a multitude of theories as to why Deutsche Bank lacked legal possession over both his mortgage and accompanying note, making it an improper party to foreclose. Concluding, like the district court before us, that Butler's complaint states no legally cognizable claim for relief, we affirm.

## I. Background

On January 31, 2007, Butler borrowed $370,000.00 from Homecomings Financial, LLC ("Homecomings"). This loan was secured with a promissory note and mortgage on his Quincy, Massachusetts

home. The mortgage document listed Homecomings as "lender" and MERS as both "mortgagee" and "nominee for [Homecomings] and [Homecomings]'s successors and assigns." The mortgage further specified that MERS held the "power of sale."

On December 1, 2009, MERS assigned Butler's mortgage to Deutsche Bank Trust Company Americas as Trustee for an unspecified trust. The assignment was signed by Jeffery Stephan ("Stephan"), acting in his capacity as a vice president of MERS, and was recorded in the Norfolk County Registry of Deeds. Six days later, Deutsche Bank, acting as trustee for the unspecified trust, filed suit in Massachusetts Land Court pursuant to the Service Members Civil Relief Act, 50 U.S.C. app. § 533, requesting authority to foreclose on Butler's property. This authority was granted on March 30, 2010.

Subsequently, MERS again assigned Butler's mortgage, this time to Deutsche Bank Trust Company Americas as Trustee for RALI 2007QS3 ("Deutsche Bank").[1] Although this assignment was undated, it was signed by Stephan in his capacity as Vice President of MERS and notarized on January 22, 2010. The assignment was recorded in

---

[1] Presumably, this second assignment was intended to correct the earlier assignment's failure to specify a receiving trust. The district court considered whether such a deficiency rendered the first assignment void, but ultimately found this point inconsequential, as both foreclosure sales were carried out only after the second assignment was complete. On appeal, Butler does not suggest that any deficiency in the first assignment was of legal import. Consequently, we do not consider what effect the failure to name a trust had on the first assignment's validity.

the Norfolk County Registry of Deeds. Thereafter, on July 15, 2010, Deutsche Bank again sought authority to foreclose from the Massachusetts Land Court. This authority was granted on February 7, 2011.

On March 2, 2011, Butler's mortgage was assigned a third time. Deutsche Bank Trust Company Americas as Trustee assigned the mortgage to Deutsche Bank Trust Company Americas as Trustee for RALI 2007QS3. This assignment was labeled "confirmatory" and signed by Michelle Swaim for Deutsche Bank. It too was recorded in the Norfolk County Registry of Deeds.

Deutsche Bank conducted a foreclosure sale on May 25, 2011, ultimately purchasing Butler's property for $230,327.77. On November 30, 2011, Deutsche bank filed a foreclosure deed at the Norfolk County Registry of Deeds. Later determining that this first foreclosure sale may have been void for failure to provide Butler with the required fourteen days' notice, see Mass. Gen. Laws ch. 244, § 14, Deutsche Bank conducted a second foreclosure sale on March 8, 2012. Deutsche Bank was again the highest bidder, purchasing Butler's home for $200,000.00. An executed deed of foreclosure was recorded on April 18, 2012.

Butler's complaint, originally filed in state court, included four counts: (1) unfair and deceptive business practices pursuant to Mass. Gen. Laws § 93A ("Chapter 93A"); (2) wrongful foreclosure based on the May 25, 2011 foreclosure sale; (3)

-4-

wrongful foreclosure based on the March 8, 2012 foreclosure sale; and (4) slander of title. In support of these claims, Butler presented a bevy of theories as to why Deutsche Bank did not validly possess either his mortgage or his mortgage note, making it unable to foreclose. Finding each of these theories lacking, the district court dismissed the suit for failure to state a claim.

On appeal, Butler argues that Deutsche Bank could not legally foreclose because: (1) MERS lacked legal authority to transfer his mortgage and, moreover, admits that it only "tracks" the sale of mortgage notes, but does not undertake assignments; (2) Stephan, a "robo-signer," could not validly serve as signatory on the assignments; (3) the assignments violated the RALI 2007QS3 trust's pooling and servicing agreement ("PSA"); (4) Deutsche Bank did not legally possess Butler's promissory note at the time of foreclosure; and (5) Deutsche Bank admitted that the first foreclosure sale was invalid.

## II. Discussion

We review a district court's grant of a motion to dismiss de novo. Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008). We take all facts pled, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the non-movant. Id. (citing Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 51 (1st Cir. 2006)). This deferential review, however, does not require that we accept the complaint wholesale; "bald assertions" and

-5-

"unsupportable conclusions" are properly disregarded. <u>Aulson</u> v. <u>Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). We affirm the grant of a motion to dismiss only where the facts, presumed to be true, fail to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6).

All four counts of Butler's complaint rest on the shared presumption that Deutsche Bank lacked the power to foreclose, either because it did not legally possess Butler's mortgage or because it had not unified that mortgage with its underlying promissory note at the time of foreclosure. In resolving this case, therefore, we begin by reviewing the common theories underlying all counts.

## A. Deutsche Bank's possession of Butler's mortgage

Butler presents several theories as to why Deutsche Bank lacked legal possession of his mortgage. We treat each theory in turn.

### 1. MERS's authority to assign the mortgage

Butler first attempts to challenge the legality of MERS head-on, arguing that under Massachusetts law it lacks the ability to transfer his mortgage. He theorizes that MERS, as "nominee" for the noteholder, Homecomings, holds the mortgage only as equitable trustee. In consequence, being able to act solely pursuant to Homecoming's authority, MERS cannot independently undertake a mortgage transfer. That MERS is also the mortgagee of record,

-6-

Butler asserts, does not expand the limited nature of its authority as "nominee." In consequence of the fact that MERS possesses no separately assignable interest, Butler theorizes, any transfer in which MERS purports to act as the assignor, or any subsequent transfer arising thereafter, is necessarily void.

Our court has previously considered, and found wanting, this precise challenge to MERS's ability to serve as assignor of a mortgage. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291-93 (1st. Cir. 2013) (analyzing Massachusetts mortgage law to determine that MERS, as nominee and mortgagee of record, possesses the ability to transfer its interest in a mortgage); see also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 355 (1st Cir. 2013) ("Culhane made clear that MERS's status as an equitable trustee does not circumscribe the transferability of its legal interest."). Because Culhane has previously done the heavy lifting of engaging with the intricacies of Massachusetts mortgage law, see Culhane, 708 F.3d at 291-93, we will not repeat its detailed explication here. Suffice it to say, Massachusetts allows a mortgage to be split from its underlying note,[2] see U.S. Bank Nat'l Ass'n v. Ibáñez, 458 Mass. 637, 652, 941 N.E.2d 40, 53-54 (2011), and where,

---

[2] Butler also argues that the first assignment purported to transfer not only the mortgage but Butler's promissory note, which MERS never possessed. Although correct, this fact does not render the assignment invalid; we have previously dismissed an identical claim on the grounds that "superfluous language does not affect the validity of the transfer of legal title to the mortgaged property." Culhane, 708 F.3d at 293 n.8.

as here, MERS possesses a legal interest in that mortgage, such an interest is transferable.  See Culhane, 708 F.3d at 292; Woods, 733 F.3d at 355.

Butler further challenges the validity of the transfers based on a theory that MERS only "tracks" the assignment of mortgage notes, but does not undertake assignments of the accompanying mortgages.  Citing to the 2011 "MERS Case Law Outline" -- a document prepared by MERS to familiarize users with its legal structure -- Butler asserts that MERS itself disclaims any role as an assignor.  This argument both misconceives MERS's business model and misconstrues the language of the "MERS Case Law Outline."

For one, that MERS separately tracks the transfer of promissory notes does not call into question the sufficiency of written assignments duly recorded in a county registry of deeds.  Woods, 733 F.3d at 355.  In fact, crucial to MERS's business model is its ability to remain mortgagee of record, possessing a legal interest in a homeowner's mortgage, while the beneficial interest in that accompanying note is transferred among MERS's member institutions.  See Culhane, 708 F.3d at 287 (explaining MERS's functioning).  That MERS electronically records these transfers of a mortgage note does not affect, much less invalidate, its ability to separately assign the mortgage.  Woods, 733 F.3d at 355 ("[T]he MERS registry electronically tracks transfers of a mortgagor's promissory note, a process which is legally distinct from the

-8-

assignment and recordation of mortgage interests in a county registry of deeds."). For another, no part of the "MERS Case Law Outline" disclaims MERS's ability to make assignments. That document states only that the records kept by MERS tracking the transfer of mortgage notes are "not electronic assignments." That is quite true. No reasonable interpretation of such a proffer, however, can lead to the conclusion that MERS lacks the legal authority to separately transfer a mortgage via a written and recorded assignment, as it did here.[3] In challenging MERS's authority to act as assignor, Butler has failed to call into question Deutsche Bank's valid possession of his mortgage.

### 2. Transfers by "robo-signers"

Butler's next allegation of invalidity stems from the conduct of Stephan, a "confirmed 'Robo-Signer,'" who signed the first and second assignments in his capacity as a vice president of MERS. Stephan's signature, Butler suggests, renders the

---

[3] Citing the RALI Series 2007QS3 trust's PSA, Butler asserts that there exists a number of unaccounted for "off record" transfers of the Butler mortgage. At most, however, that PSA proves that the trust set forth a specified process for the receipt of mortgage loans. It does not prove such assignments indeed occurred and were not accounted for in Deutsche Bank's chain of title. In fact, Butler's brief later forwards the contradictory argument that the assignment violated the PSA specifically because it never traveled through these intermediary parties. In any case, recorded in the Norfolk County Registry of Deeds is an assignment showing that Butler's mortgage traveled from MERS directly to Deutsche Bank. This is a complete chain of title, sufficient to prove the validity of that assignment. See Woods, 733 F.3d 356 (citing Ibáñez, 941 N.E.2d at 53)).

assignments insufficient to pass legal title. In making this claim, however, Butler employs the term "robo-signer" without providing an operative definition and, perhaps more telling, forwards no particular legal theory as to why a "robo-signed" document is necessarily invalid.

Faced with a nearly identical claim, our court has unequivocally "decline[d] to speculate on the meaning . . . [of] the term ['robo-signing']." See Wilson v. HSBC Mortg. Servs., Inc., No. 13-1298, 2014 WL 563457, at *10 (1st Cir. Feb. 14, 2014) (collecting cases showing the lack of a uniform definition of "robo-signers" and their precise role in the process of bundling and securitizing home mortgages). Moreover, we have held that "the bare allegation of 'robo-signing' does nothing to undermine the validity" of an assignment. Id.

In fact, Massachusetts statutory law sets forth the precise requirements for a valid mortgage assignment:

> Notwithstanding any law to the contrary . . . [an] assignment of [a] mortgage . . . executed before a notary public . . . by a person purporting to hold the position of president, vice president, . . . or other officer . . . of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity . . . .

Mass. Gen. Laws ch. 183, § 54B. MERS's assignments of the Butler mortgage fully abided by these statutory requirements: Stephan, in his capacity as a vice president of MERS, signed both assignments

-10-

in the presence of a notary public. Culhane, 708 F.3d at 294 (finding that an assignment adhering to the requirements of section 54B is valid); see also Wilson, 2014 WL 563457 at *9.[4] Failing to allege any theory as to how Stephan's role as a "robo-signer" would invalidate the validity of the mortgage transfers, and pleading no other failure to abide by section 54B's requirements, this challenge to the validity of Deutsche Bank's possession fails.

### 3. RALI 2007QS3's PSA

Butler's complaint next alleges that Deutsche Bank lacked valid possession of his mortgage, as its receipt of the assignment was in violation of RALI 2007QS3's PSA. Specifically, the PSA required that: (1) any mortgage assigned to the trust undergo a series of transfers through three predetermined parties and (2) all assignments to the trust be complete by February 27, 2007. That Deutsche Bank received the mortgage without its first passing through these required intermediaries, and at a date some two years beyond the trust's closing date, Butler asserts, are violations of

_____

[4] On appeal, Butler argues that the assignments do not meet section 54B's requirements because they were not undertaken by an agent with power to bind a principal. Distilling this argument as best we can from the unclear pleadings, it appears that Butler is attempting to contest the applicability of section 54B on the theory that, because MERS never validly held a transferable interest in his mortgage, Stephan -- as an agent of MERS -- could not transfer rights never possessed by the principal. Because we have already dismissed the allegation that MERS did not possess a transferable interest in Butler's mortgage, we need not consider this claim further.

the trust's terms sufficient to render its possession of the mortgage void.

The contours of this argument have proved a moving target throughout this litigation, as Butler initially appeared to assent to the application of Massachusetts law but now, on appeal, argues that New York law controls. Given this shifting focus, we pause briefly trace the claim's evolution.

### a. The progression of Butler's claim

In support of its motion to dismiss, Deutsche Bank argued that, under Massachusetts law, a homeowner lacks standing to challenge assignments that violate a trust's PSA but are otherwise valid to pass title. Because Butler was neither party to, nor beneficiary of such an assignment, Deutsche Bank asserted that he had shown no legally protected interest sufficient for standing.

In his opposition to this motion to dismiss, Butler was silent on the issue of New York law and, indeed, failed to claim -- under any governing law -- that such assignments would be void and not voidable. Rather, arguing that "in Massachusetts foreclosure operates as a 'creature of contract,'" he claimed to derive standing to challenge Deutsche Bank's possession on the grounds that only Homecomings, not Deutsche Bank, was party to his original contract.[5]

---

[5] Presumably, this argument attempted to suggest that Homecomings somehow lacked the ability to assign its contractual interest to another party under Massachusetts law.

-12-

Applying Massachusetts law, the district court dismissed this claim, reasoning that a homeowner lacks standing to challenge a mortgage assignment that is voidable, but not void. Although that decision predated Culhane, the court's conclusion was in line with our later holding therein: an assignment that is voidable, but not void, may not be challenged by a homeowner that is not a direct party to, or beneficiary of, the transfer. Culhane, 708 F.3d at 291 ("[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title."). Thus, the district court reasoned that a failure to abide by the PSA, while making the transfer of Butler's mortgage voidable at the behest of the trust beneficiaries, was not the sort of shortcoming able to create judicial standing for Butler to challenge Deutsche Bank's possession.

In his opening appellate brief, Butler again argued that Deutsche Bank's failure to prove that his mortgage transferred through three intermediary parties -- those named in the trust's governing terms -- and was received by Deutsche Bank by the appropriate closing date, would "result[] in a failure of the trust's interest in the Butler mortgage and note." Here, for the first time, Butler suggested that New York law generally governs the transfer of assets into a New York business trust. He continued on to say, however, that "as an assignment of a mortgage

-13-

is a transfer of an interest in land in the Commonwealth, with regards to the trust's specific claim of the dominion and control over the title to the Butler real property, <u>Massachusetts law</u> would need to be referenced."

It is only in his reply brief that Butler clearly sets forth his current claim. Therein, Butler asserts that New York Estates, Powers and Trust Law makes clear that "every . . . act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is <u>void</u>." N.Y. Est. Powers & Trusts Law § 7-2.4 (emphasis added). In support of this claim, he cites <u>Wells Fargo Bank, N.A.</u> v. <u>Erobobo</u>, No. 31648/2009, 2013 WL 1831799 (N.Y. Sup. Ct. 2013) (unpublished), which ruled that contravention of a trust's PSA rendered a mortgage assignment void. <u>Id.</u> at *8-9. While noting that a number of courts have disclaimed the reasoning of <u>Erobobo</u>, on the grounds that New York courts commonly allow for the ratification of ultra vires acts by trustees, Butler asserts that these cases erroneously interpret New York law. Moreover, although Butler's reply brief discusses the content and effect of New York law, it wholly neglects to reference to the predicate question of Massachusetts choice-of-law rules, stating only that "trust law is state law."

### b. The applicability of waiver

Deutsche Bank, at oral arguments and through supplemental briefing, argues that Butler has waived the ability to claim that

New York law applies, having failed to raise the issue before the district court and bringing it, squarely, only in his reply brief.

On appeal, absent extraordinary circumstances counseling for exception, we routinely deem waived arguments not timely presented before the district court. Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003). This doctrine of waiver applies with equal force to claims seeking the application of a foreign state's law. See Ortiz v. Gaston Cnty. Dyeing Mach. Co., 277 F.3d 594, 597 (1st Cir. 2002) (waiving a choice-of-law argument brought first during post-judgment motions); Cheever v. Graves, 32 Mass. App. Ct. 601, 610, 592 N.E.2d 758, 764 (1992)(refusing to consider a choice-of-law argument where "there is nothing in the record before us to indicate that the defendants requested that the judge take judicial notice of the law of Connecticut or . . . called the judge's attention to this statute"); cf. Levin v. Dalva Bros., 459 F.3d 68, 72 (1st Cir. 2006) (allowing choice-of-law claim that was raised for the first time at trial, but prior to "the court . . . issu[ing] any ruling on the issue"); Conn. Nat'l Bank of Hartford v. Kommit, 31 Mass. App. Ct. 348, 351 n.3, 577 N.E.2d 639, 641 n.3 (1991) (allowing a party to assert the applicability of Connecticut law for the first time on appeal where "the broader issue of choice-of-law was squarely raised below").

Here, Butler made no mention of the applicability of New York state law before the district court. In fact, the argument

-15-

Butler presented in his memorandum in opposition to the motion to dismiss did not focus on the issue of void versus voidable assignments at all, and in defense to Deutsche Bank's claims he argued only that its memorandum in support of the motion to dismiss erroneously interpreted Massachusetts law. This shortcoming was further compounded on appeal, where Butler's initial briefing exhibited a marked lack of coherence, appearing to reference New York law only to then disclaim its application on the question of Deutsche Bank's "control over the title to the Butler real property." In sum, the unfocused nature of this brief failed to squarely call our attention to the claim he now relies on.[6] See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (concluding that "[j]udges are not mind-readers," and thus, "arguments confusingly constructed and lacking in coherence" are appropriately waived (citations and internal quotation marks omitted)). Even in reply, Butler fails to provide any developed

---

[6] Butler's opening brief states that "under . . . N.Y. Est. Powers & Trusts Law § 7-2.4 the Butler note and mortgage would not be legally among [the trust's] corpus." It then continues: "[u]nder Massachusetts real property law regarding the mortgage itself, as a transfer of interest in land, [] the Defendant has failed to produce executed writings evidencing such purported chain of transfer of the title of the Butler real property. Thus, any proffered 'assignment' relied upon by [Deutsche Bank] could never be 'ratified,' as it is 'void.'" This argument does not clearly challenge, as error, the application of Massachusetts law to the question of whether the assignment from MERS to Deutsche Bank was void and not voidable. Rather, ultimately it appears to claim that Deutsche Bank's failure to prove a complete chain of title, as required by Massachusetts law, would render the mortgage void.

analysis of Massachusetts -- the forum state -- choice-of-law rules, skipping over this predicate question and offering only his interpretation of the content and effect of New York law.  See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990) (finding waived an argument "coherently pulled together for the first time in [a] reply brief"); Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 44 (1st Cir. 2010) (same).

The effect of these various insufficiencies is clear.  To reach Butler's claim would require our court to consider an issue not raised before the district court, presented squarely only in a reply brief, and -- even then -- missing a discussion of an elemental aspect of the claim.  Such an untimely and incomplete presentation of arguments deprives this court of the beneficial insights of the district court and, perhaps more critically, deprives the appellee of a fair opportunity to respond, leaving our court with "one side of a two-sided story."[7]  See Sandstrom, 904 F.2d at 87.  On the whole, we believe it unwise to treat these questions of state law absent coherent and timely briefing.  Thus, we find waived Butler's unseasonably late argument that New York

---

[7] Butler never gave a reason for the late presentation of this argument nor suggested that the application of New York law was undiscoverable at earlier stages of litigation. Although we allowed Deutsche Bank to file a supplemental brief, Butler's dilatory and unclear briefing still had the effect of circumscribing Deutsche Bank's ability to respond and leaving key aspects of the claim underdeveloped.  Moreover, we are unconvinced that supplemental briefing on the part of Deutsche Bank should serve to rescue Butler's claims from the precipice of waiver.

law applies to make void Deutsche Bank's receipt of Butler's mortgage.[8]

### c. Resolution under Massachusetts law

Under Massachusetts law, it is clear that claims alleging disregard of a trust's PSA are considered voidable, not void. See Woods, 733 F.3d at 354 ("[C]laims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing."); Wilson, 2014 WL 563457, at *6 ("[W]hen a corporate officer acts beyond the scope of his authority, his acts in excess of [that] authority, although voidable by the corporation, legally could be ratified and adopted by it." (alterations and quotation marks omitted) (quoting Comm'r of Banks v. Tremont Trust Co., 259 Mass. 162, 179-80, 156 N.E. 7, 14-15 (1927)); cf. Culhane, 708 F.3d at 291 (allowing for standing where claims are predicated on the theory that "the assignor had nothing to assign or had no authority to make an assignment to a particular assignee"). Thus, having only presented facts sufficient to show

---

[8]  We note without decision, however, that the vast majority of courts to consider the issue have rejected Erobobo's reasoning, determining that despite the express terms of N.Y. Est. Powers & Trusts Law § 7-2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable. See, e.g., Davis v. Countrywide Home Loans, Inc., No. H-13-623, 2014 WL 838146, at *4 n.8 (S.D. Tex. Mar. 3, 2014) (collecting cases); Wolff v. Bank of N.Y. Mellon, No. 13-CV-2175(PJS/JSM), 2014 WL 641510, at *9 (D. Minn. Feb. 19, 2014) (same); Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d. 40, 48 n.5 (D. Mass. 2013).

the assignment was voidable under Massachusetts law, Butler lacks standing to challenge Deutsche Bank's possession of the mortgage on this ground. Culhane, 708 F.3d at 291. Absent such standing, this theory as to the invalidity of Deutsche Bank's possession cannot form the basis for relief.

**B. Deutsche Bank's failure to unify the mortgage and note**

Butler additionally predicates his complaint on the theory that Deutsche Bank admittedly lacked possession of his promissory note at the time it initiated both foreclosure sales. He argues that, under the reasoning of Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 969 N.E.2d 1118 (2012), this failure to reunify the note and mortgage prior to giving notice of foreclosure violates Massachusetts foreclosure law.

Butler is correct that Eaton established that, to properly foreclose on real property in Massachusetts, a party must possess both the mortgage and underlying note. Id. at 1133. Yet, recognizing that this holding significantly recast Massachusetts law, which had long accepted the ability of a mortgage holder to foreclose absent possession of the note, the Massachusetts Supreme Judicial Court ("SJC") applied its ruling prospectively. Id. Thus, for all foreclosure sales in which notice of the right to foreclose is given after June 22, 2012 -- the date of Eaton's publication -- reunification of the mortgage and note is required. The requirement of reunification was also applied retroactively to

-19-

Eaton herself, but for all other foreclosure sales predating June 22, 2012, possession of the note was not required.  Id.

Notice of foreclosure in this case was given years before Eaton's publication, and Butler does not claim that Eaton expressly binds his case.  Rather, he relies on subsequent decisions by the Massachusetts Appeals Court, which applied Eaton retroactively to litigants who "advanced the same arguments to [the appellate court] at the same time those arguments were being considered by the Supreme Judicial Court" in Eaton.  HSBC Bank USA, N.A. v. Norris, No. 11-P-1916, 2013 WL 708944, at *2 (Mass. App. Ct. Feb. 28, 2013) ("For the same reason that the Supreme Judicial Court applied its ruling retroactively to Eaton [her]self, we apply it to Norris."); see also Lyons v. Mortg. Elec. Registration Sys., Inc., No. 11-P-650, 2013 WL 2420705, at *1 (Mass. App. Ct. June 5, 2013) (same).  Thus, because Butler's claim was in litigation at the time Eaton was resolved, he theorizes that the rule requiring reunification of note and mortgage applies to Deutsche Bank's foreclosure.

A subsequent SJC case, Galiastro v. Mortg. Elec. Registration Sys., Inc., 467 Mass. 160, 4 N.E.3d 270 (2014), has clarified the parameters of Eaton's application, and its holding guides us here.  In Galiastro, the SJC answered, affirmatively, the question of whether Eaton's retroactive effect extended to other individuals with cases on appeal at the same time as Eaton.  Id. at 277 (applying Eaton's holding "to cases that were pending on appeal

-20-

in the Appeals Court when the rescript in <u>Eaton</u> issued").[9] Thus, <u>Eaton</u> applies to two sets of litigants: (1) those challenging foreclosures for which the notice of sale was given after June 22, 2012, and (2) those with wrongful foreclosure claims (predicated on the theory that the foreclosing entity did not possess their note) that were on appeal as of June 22, 2012. To the claims of all litigants outside these closed sets, we apply the pre-<u>Eaton</u> rule, under which reunification is not required. See <u>Eaton</u>, 969 N.E.2d at 1131.

Turning to the instant case, it is clear that Butler's claims fall outside even <u>Eaton</u>'s newly expanded reach.[10] The district court entered judgment against Butler on August 14, 2012, and he filed his Notice of Appeal to our court on September 13, 2012. As such, the case was still pending before the trial court

---

[9] <u>Galiastro</u> defined "pending on appeal" as including "those cases in which the case was docketed in the Appeals Court before June 22, 2012, and the Appeals Court had not yet issued a decision" as well as cases "where the Appeals Court had issued a decision, . . . [and the] litigants have filed a petition for further appellate review." <u>Galiastro</u>, 4 N.E.3d at 277 n.14.

[10] In the application of their decisions, state courts "'may make a choice . . . between the principle of forward operation and that of relation backward.'" <u>Littlefield</u> v. <u>Caton</u>, 856 F.2d 344, 347 (1st Cir. 1988) (quoting <u>Great N. Ry. Co.</u> v. <u>Sunburst Oil & Ref. Co.</u>, 287 U.S. 358, 364 (1932)). Therefore, we follow the guidance of the SJC in determining whether <u>Eaton</u> should apply retroactively. See <u>id.</u> (applying state rule on retroactivity); <u>Commonwealth</u> v. <u>Dagley</u>, 442 Mass. 713, 721 n.10, 818 N.E.2d 527, 533 n.10 (2004) (holding that Massachusetts' courts are free to give a state law decision only prospective effect, so long as there is "no constitutional requirement that the new rule . . . be applied retroactively.").

-21-

on June 22, 2012, and was not on appeal until some months later. Applying Galiastro, we necessarily find that Deutsche Bank need not have possessed Butler's note.

## C.  Deutsche Bank's alleged admission of invalidity

In short, we have now determined that Butler's complaint alleged no facts sufficient to suggest Deutsche Bank lacked a legally valid interest in his mortgage -- that is, an interest adequate for the commencement of foreclosure proceedings.  Still, Butler asserts one final theory specific to the first foreclosure sale.  Pointing to a statement in Deutsche Bank's memorandum in support of its motion to dismiss, he alleges that there was a judicial admission as to the invalidity of the first foreclosure sale.  In explaining why a second foreclosure sale was conducted, Deutsche Bank stated that "the [first] foreclosure sale may have been void because Butler may not have received the fourteen (14) days' notice of sale required."  Butler reads this statement to be an admission of the sale's invalidity, necessarily making his wrongful foreclosure claim sufficiently plausible to survive a motion to dismiss.

It is paramount that "[t]o be binding, a judicial admission must be clear."  Harrington v. City of Nashua, 610 F.3d 24, 31 (2010) (citation and internal quotation marks omitted). Thus, a statement that a foreclosure sale "may" have been void cannot be treated as an unambiguous admission of the sale's

definite invalidity.  At most, such a statement could be an admission that the sale was potentially in violation of Massachusetts statutory notice requirements, Mass. Gen. Laws ch. 244, § 14.  Nonetheless, in light of Deutsche Bank's statement, we recognize that a claim that Butler was not provided fourteen days' notice of the impending foreclosure sale might well have been plausible, if pled in his complaint.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Unfortunately for Butler, however, that complaint is wholly silent on the issue of notice, asserting only that the first foreclosure sale was void because Deutsche Bank was not the "holder" of his mortgage, and therefore lacked the power to foreclose under Mass. Gen. Laws ch. 244, § 14.  Having made no allegations of deficient notice in his complaint, Butler has failed to plead a claim on which relief might be granted.  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 82 (1st Cir. 2013) ("The critical question is whether the claim . . . is made plausible by the cumulative effect of the factual allegations contained in the complaint." (alterations and citation omitted)).

This insufficiency is made even more clear in Butler's memorandum in opposition to Deutsche Bank's motion to dismiss, where, far from alleging deficient notice, he attacks Deutsche Bank for "neglect[ing] to provide any evidentiary foundation for such 'assumption' of defective notice."  Perhaps unwittingly, this

retort highlights the deficiency of Butler's current claim: there was not a modicum of fact pled before the district court in support of a claim of deficient notice.  Cf. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st. Cir 2011) (presuming, for the purposes of a motion to dismiss, the truth of all factual allegations that are pled).  Having put forth no factual allegations to support his claim and, moreover, having expressly attacked the validity of such a claim before the district court, Butler cannot now reverse course and build on appeal a claim he disavowed below.

### III. Butler's causes of action

In short, Butler's complaint forwards no facts sufficient to support a theory that Deutsche Bank lacked the proper authority to foreclose or that its conduct in foreclosing violated Massachusetts law.  We see no grounds on which to question that Deutsche Bank validly received an assignment of Butler's mortgage.  Moreover, under governing law, Deutsche Bank was not required to possess the mortgage note when it initiated foreclosure.  On appeal, Butler has asserted theories not brought, or even specifically disclaimed, before the district court.  Untimely notice and incomplete pleading, however, have rendered these theories inadequate.  We find, therefore, that Butler has pled no

wrongful foreclosure, slander of title, or Chapter 93A[11] claim on which relief may be granted.

## IV. Conclusion

In sifting through the detritus of the housing market's collapse, courts have been called upon to answer any number of disputes regarding the legal rights of homeowners and financial institutions. Recent litigation in Massachusetts state court has squared at least one more corner of these ongoing debates, and it is clear that the holding of Galiastro is fatal to Butler's claim. Finding that Deutsche Bank need not have possessed Butler's note, and having located no other colorable claim on which relief might be granted, we affirm the district court's decision to dismiss.

**Affirmed.**

---

[11] The district court's opinion went on to discuss alternative grounds of dismissal, including Butler's alleged failure to abide by prerequisite notice requirements in bringing a Chapter 93A claim. The parties spar over whether such notice was required, but this is a fight we need not referee. We have found no valid basis on which to challenge Deutsche Bank's ability to foreclose, and "without factual allegations sufficient to suggest illegality occurred, we are necessarily left without allegations sufficient to suggest [the foreclosing entity] knew of such illegality." Woods, 733 F.3d at 358. Butler's Chapter 93A claim would, thus, necessarily fail for lack of scienter. In any case, "it is not enough in the context of Chapter 93A to allege that defendants foreclosed in violation of Massachusetts foreclosure law. Something more is required." Id. (internal quotation marks and alterations omitted) (quoting Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 281 (1st Cir. 2013)).