**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 16-1679

MATS A. SAMUELSSON; MARIA A. SAMUELSSON,

Plaintiffs, Appellants,

v.

HSBC BANK USA, N.A., as Trustee on behalf of Ace Securities
Corp., Home Equity Loan Trust and for the Registered Holders of
Ace Securities Corp., Home Equity Loan Trust, Series 2006-HE4;
OCWEN LOAN SERVICING, LLC,

Defendants, Appellees,

ROXIE J. ROSE,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Kayatta, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Glenn F. Russell, Jr. and Glenn F. Russell, Jr.,
& Associates, P.C., on brief for appellants.
Marissa I. Delinks, Maura K. McKelvey, Robert M. Buchholz,

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

and <u>Hinshaw & Culbertson LLP</u> on brief for appellees.

March 29, 2018

**SOUTER**, **Associate Justice**.  Mats and Maria Samuelsson appeal from the dismissal of their action in the nature of a petition for declaratory judgment, by which they sought, among other things, an injunction against a foreclosure sale of their house.  We affirm.

According to their allegations, appellants entered into a loan refinancing arrangement in May 2006.  They signed a $560,000 promissory note payable to Sunset Mortgage Company, L.P., and executed a mortgage agreement for securing repayment of the loan.  Under its terms, appellants "mortgage[d], grant[ed], and convey[ed]" legal title to the property to Mortgage Electronic Registration Systems, Inc. (MERS),[1] acting "solely as a nominee for [Sunset] and [Sunset's] successors and assigns."  On May 14, 2009, MERS ostensibly assigned the mortgage to appellee HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corp., Home Equity Loan Trust and the registered holders of ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE4 ("HSBC").

---

[1]  MERS was formed by residential mortgage lenders and investors "to streamline the process of transferring ownership of mortgage loans in order to facilitate securitization." Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 287 (1st Cir. 2013).  When a MERS member sells a note to another MERS member, MERS remains the mortgagee of record.  When a MERS member sells a note to a nonmember, MERS assigns the mortgage to the new noteholder.  "This system reduces paperwork and avoids fees that otherwise would be required to record assignments of mortgages at local recording offices."  Id.

Shortly thereafter, HSBC began foreclosure proceedings in Massachusetts Land Court, which ultimately entered judgment authorizing HSBC to foreclose. Appellants then brought this action in Massachusetts Superior Court seeking both a declaratory judgment that HSBC lacked authority to foreclose on the mortgage because the assignment to HSBC was invalid, and damages for slander of title committed by recording the assignment.[2] Appellees removed the action to federal court on the basis of diversity and successfully moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

We review the dismissal order *de novo*. <u>Butler</u> v. <u>Deutsche Bank Trust Co. Americas</u>, 748 F.3d 28, 32 (1st Cir. 2014). The Samuelssons' claims depend on the sufficiency of allegations in support of the proposition that HSBC has never validly held the mortgage under Massachusetts law. In support, they allege and argue, first, that MERS did not have the power to assign the mortgage and, second, that the assignment was made in violation of the Pooling and Servicing Agreement ("PSA") governing the Trust. Both positions are foreclosed by precedent.

As for the first, it is true that under Massachusetts law, "the statutes governing foreclosure by sale . . . requir[e]

---

[2] Appellants do not challenge the dismissal of two other claims.

- 4 -

a foreclosing mortgagee both to control the note (either as the noteholder or as its agent) and to hold the mortgage." Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 288 (1st Cir. 2013) (citing Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1129 & n.20, 1131 (Mass. 2012)).[3]  But prior to sale, "the note and the mortgage need not be held by the same entity" and, absent a contractual provision stating otherwise, "a mortgagee may assign its mortgage to another party."  Id. at 292.

Appellants suggest that because MERS held the mortgage merely as the "nominee" for Sunset, it was not the mortgagee and lacked the power to assign the mortgage.  But we have rejected this very argument many times over.  See id. at 293; see also Dyer v. Wells Fargo Bank, N.A., 841 F.3d 550, 553 (1st Cir. 2016) (declining to accept argument because "we held in Culhane . . . that a mortgage contract that names 'MERS . . . as nominee for [Lender] and [Lender's] successors and assigns' does suffice to make MERS the mortgage holder and then authorize MERS to assign the mortgage on behalf of the lender to the lender's successors and assigns"); Butler, 748 F.3d at 32 (rejecting argument because "[o]ur court has previously considered, and found wanting, this

---

[3] In an affidavit filed in the Land Court, a representative of appellee Ocwen Loan Serving, LLC, averred that HSBC was the holder of the note (which had been endorsed in blank).  Appellants do not challenge HSBC's current status as the noteholder.

- 5 -

precise challenge to MERS's ability to serve as assignor of a mortgage"); <u>Woods</u> v. <u>Wells Fargo Bank, N.A.</u>, 733 F.3d 349, 355 (1st Cir. 2013) ("<u>Culhane</u> made clear that MERS's status as an equitable trustee does not circumscribe the transferability of its legal interest."). Appellants offer no persuasive basis on which to distinguish these cases.

As for appellants' second argument, they claim that MERS's assignment was made in violation of the Trust's PSA in two respects: first, that the assignment was made after the closing date provided for in the PSA; second, that the assignment was not made by the depositor for the Trust. Whatever merit these contentions might have, our precedents are clear that appellants do not have standing to press them. While "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)," <u>Culhane</u>, 708 F.3d at 291, "an assignment made in contravention of . . . a trust agreement is at most voidable at the option of the parties to the trust agreement, not void as a matter of law," <u>Dyer</u>, 841 F.3d at 554. Because such assignments are merely voidable, appellants' claims of noncompliance with the PSA are not tantamount to an allegation that the assignment is invalid, and are claims that appellants lack standing to raise. See <u>Butler</u>, 748 F.3d at 37 ("Under Massachusetts law, it is clear

- 6 -

that [third-party] claims alleging disregard of a trust's PSA [charge acts that are] voidable, not void."). Accordingly, a mortgagor's "claims that merely assert procedural infirmities in the assignment of [the] mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing. In contrast, standing exists for challenges that contend that the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands." Woods, 733 F.3d at 354 (citation omitted). Indeed, in Butler, we held that the mortgagor lacked standing to raise one of the very theories of noncompliance raised here: that the assignment was made after the trust's closing date. See 748 F.3d at 34, 37. Appellants' argument boils down to a refusal to accept these cases as rightly decided, a position we have no warrant to consider.

In sum, the appellants have alleged no basis to dispute the validity of the assignment in question and the action was properly dismissed.

**Affirmed.**